# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV - 5 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                             DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. **19MJ4909**
Samsung Tablet, Model No. SMT330NU, Serial No. )
R52G20J9ZPmore particularly described in A-2  )
                                              )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-2

located in the  Southern  District of  California  , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of Controlled Substances; Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Vincenzo L. Zoni
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/5/19

*Judge's signature*

City and state: San Diego, CA       Honorable Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Vincenzo L. Zoni, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices, as further described in Attachments A-1 through A-4 (collectively the "**Target Devices**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

>   Alcatel Cellular Phone
>   Model No. 5049Z
>   IMEI 0149400005548533
>   ("**Target Device 1**")
>
>   Samsung Tablet
>   Model No. SMT330NU
>   Serial No. R52G20J9ZP
>   ("**Target Device 2**")
>
>   LG Cellular Phone
>   Model No. Q710AL
>   MEID No. 089466522504350072
>   ("**Target Device 3**")
>
>   ZTE Cellular Phone
>   Serial No. 320484440869
>   IMEI 990008941610417
>   ("**Target Device 4**")

This search supports an investigation and prosecution of Hector Martinez-Robos ("MARTINEZ-ROBOS") and Rosa Isela Acuna ("ACUNA"), who are presently charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. On or about April 8, 2019, I obtained authority to search these **Target Devices**. *See* 19-MJ-1417 AGS (S.D. Cal. April 8, 2019). This warrant seeks authority to review the **Target Devices** again, to fully ensure that investigators have seized all data

relevant to the case. That search can take advantage of any updates in software and hardware tools available to investigators, and investigators may use a "PIN" code that Acuna provided for **Target Device 4** to conduct a more thorough search. Moreover, this warrant seeks authority for a broader range of time. Except as noted in Paragraphs 22 and 23, the probable cause provided in this affidavit is the same as in my prior application.

3. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Devices** from MARTINEZ-ROBOS and ACUNA on January 7, 2019, when they were arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. The **Target Devices** are currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, Suite 3200, San Diego, California 92101.

4. Based on the information below, there is probable cause to believe that searches of the **Target Devices** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**TRAINING AND EXPERIENCE**

6. I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") formerly known as the ICE Office of Investigations ("ICE-OI"). I have been employed by ICE OI / HSI as a Special Agent since the agency was first created on March 1, 2003. From 2002 to 2003, I was a Special Agent with a predecessor agency,

2

the Immigration and Naturalization Service. Prior to becoming a Special Agent, I served as Border Patrol Agent with the United States Border Patrol, from 1995 to 2002.

7. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border.

8. I have completed the USBP Basic Training Course at the Federal Law Enforcement Training Center located in Glynco, Georgia, as well as other follow-up courses required by ICE.

9. Since June of 2016, I have been assigned to the HSI Special Agent in Charge - Investigative Services Group as a liaison between HSI and the United States Attorney's Office for the Southern District of California.

10. Prior to my current assignment, I was assigned to the Deputy Special Agent in Charge San Ysidro, located in San Ysidro, California. My specific assignment was to the Narcotics Response Group. During my tenure, my duties included investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Narcotics Response Group, I participated in the investigation of various drug-trafficking organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. Because the nature of my ongoing work requires me to keep apprised of recent trends and developments involved in the investigations of drug traffickers, I regularly communicate with agents from the Drug Enforcement Administration, Customs and Border Protection ("CBP"), and other local and state law enforcement officers operating within the Southern District of California.

11. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, and tablets, to maintain communications with co-conspirators in order to

3

*Affidavit in Support of Search Warrant*

further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

12. In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations including reviewing evidence, conducting physical and electronic surveillance, and executing search and arrest warrants. I have interviewed defendants and witnesses while conducting various investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

13. Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

    a. Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

    b. Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

    c. Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

    d. Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

    e. Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived

4

unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

      f.    The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

14.    Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

15.    Tablets, which are also mobile devices, have many, if not all, of the same features as cellular telephones, and so are attractive to drug-trafficking organizations for the same reasons that cellular telephones are. Tablets too are mobile and provide instant access to texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and, for many models, telephone calls and voice messages.

## FACTS IN SUPPORT OF PROBABLE CAUSE

16.    According to a report prepared by CBP Officer Manis, at about 9:30 p.m. on January 7, 2019, Officer Manis was conducting inspections in the pre-primary inspection area at the San Ysidro POE with a K-9 Unit. At that time, the K-9 Unit alerted to the spare tire of a grey Kia Sorento bearing California license plate 6TCL582. Officer Manis informed fellow CBP Officer Garcia of the alert.

17.    Per Officer Garcia's report, Officer Garcia came over to the Kia Sorento and inspected the spare tire, which was located under the vehicle. Officer Garcia felt the tire, which felt solid. Officer Garcia then approached the driver, MARTINEZ-ROBOS, who said that he was going to Los Angeles with his passenger, ACUNA, and ACUNA's child (who was also in the car). MARTINEZ-ROBOS told Officer Garcia that he was coming

5

*Affidavit in Support of Search Warrant*

from Tijuana, and he twice said that he had nothing to declare. At this point, Officer Garcia had MARTINEZ-ROBOS get out of the car; he handcuffed MARTINEZ-ROBOS and escorted him to the security office. (The reports prepared by the CBP Officers does not state what ACUNA and her child did at this point, but I am aware from my own training and experience that when a vehicle is sent to secondary inspection, CBP Officers will first remove the occupants and have them wait in an area like the security office at the Port of Entry.)

18. The Kia Sorrento was sent to secondary inspection and scanned through the "Z-Portal" X-Ray Machine. Per the report of CBP Officer Santos, the scans showed anomalies in the spare tire and in the rear quarter panels of the vehicle.

19. Per CBP Officer Nicklen's report, Officer Nicklen then removed a package from the rear passenger-side quarter panel of the Kia Sorento; the contents of the package field-tested as positive for cocaine. In total, Officer Nicklen recovered four packages from the quarter panel and 21 from the spare tire; the 25 total packages had a gross weight of 28.68 kilograms.

20. Per his report, after discovering the first package in the rear passenger-side quarter panel, Officer Nicklen placed MARTINEZ-ROBOS and ACUNA under arrest for the importation of controlled substances. Officer Nicklen also seized the Kia Sorento and the cocaine. Shortly thereafter, I seized the personal effects belonging to MARTINEZ-ROBOS and ACUNA, including the **Target Devices**. Specifically, **Target Devices 1** and **2** were seized from MARTINEZ-ROBOS, and **Target Devices 3** and **4** were seized from ACUNA.

21. Following their arrests, both MARTINEZ-ROBOS and ACUNA received their *Miranda* rights from HSI Special Agent Raul Rodriguez. Per Special Agent Rodriguez's report, both MARTINEZ-ROBOS and ACUNA claimed not to know about the presence of cocaine in the Kia Sorento.

22. I note that in the post-arrest interview, ACUNA provided a "PIN" code for **Target Device 3**. Investigators did not make use of that PIN code when attempting their

6

first search, and intend now to use the PIN code to obtain a better download of the device.

23. I am also aware of added information tending to support probable cause, gathered in the course of this investigation. Photographs found on **Target Device 4** tend to show that ACUNA and MARTINEZ-ROBOS were working together to bring drugs into the United States; those photos, which are on Acuna's phone, are of (i) the Kia Sorento, (ii) the rear storage area, (iii) a man standing next to the storage area with his hand on a spare tire, which investigators believe is MARTINEZ-ROBOS, (iv) various pictures of tires, (v) MARTINEZ-ROBOS and ACUNA together in an intimate pose, and (vi) pictures of bulk quantities that, based on my training and experience, are consistent with methamphetamine and cocaine. And, a review of crossing records shows that ACUNA and MARTINEZ-ROBOS crossed the border together on several occasions in December 2018, before getting arrested in January 2019 in this case.

24. Based upon my experience investigating drug smuggling, my training, and my consultation with other investigators who have experience investigating drug smuggling in near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding the drugs in hidden compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

25. Given the facts surrounding the arrests of MARTINEZ-ROBOS and ACUNA, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of MARTINEZ-ROBOS and ACUNA will be found in the **Target Devices**. Such evidence,

*Affidavit in Support of Search Warrant*

which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

  a. tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

  d. tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

  e. tending to identify the movement of proceeds associated with the trafficking of cocaine or some other federally controlled substance that was imported from Mexico into the United States;

  f. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

  g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

26. Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to

*Affidavit in Support of Search Warrant*

attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. In light of this understanding and the information provided in this affidavit, including the new information provided in Paragraph 23, I believe seek authority to review the devices without a limiting date range.

## METHODOLOGY

27. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target**

9

*Affidavit in Support of Search Warrant*

**Devices** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

29. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

30. Law enforcement has attempted to obtain the evidence sought, pursuant to warrants authorized by this Court.

### CONCLUSION

31. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that MARTINEZ-ROBOS and ACUNA used the **Target Devices** to facilitate the offense of drug smuggling and to communicate with co-conspirators. The **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

32. Because the **Target Devices** were promptly seized following the arrests of MARTINEZ-ROBOS and ACUNA at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by them continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from November 7, 2018, up to and including January 8, 2018.

33. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Devices**, as described in Attachments A1 through

///
///
///

10

A-4, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
VINCENZO L. ZONI
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this __5th__ day of November, 2019.

_____
THE HON. ALLISON H. GODDARD
United States Magistrate Judge

11

*Affidavit in Support of Search Warrant*

# Attachment A-2

## *Item to be Searched*

The item to be searched is as follows:

> Samsung Tablet
> Model No. SMT330NU
> Serial No. R52G20J9ZP
> (**"Target Device 2"**)

**Target Device 2** is currently in the possession of the Department of Homeland Security and are presently stored at 880 Front Street, Suite 3200, San Diego, CA 92101.

2

*Affidavit in Support of Search Warrant*

# Attachment B

## *Items to be Seized*

Authorization to search the cellular/mobile telephones and tablet described in Attachment A (the "**Target Devices**") includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones and tablet for evidence described below. The seizure and search of the cellular/mobile telephones and tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones and tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data:

    a.    tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    e.    tending to identify the movement of proceeds associated with the trafficking of cocaine or some other federally controlled substance that was imported from Mexico into the United States;

      f.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

      g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

2

*Affidavit in Support of Search Warrant*